UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| TERESA M. HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-364-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| PNC BANK, N.A., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant PNC Bank, N.A. (PNC") has filed a motion for summary judgment regarding Plaintiff Teresa Howard's claims of discrimination. [Record No. 33] Howard asserts that she was terminated by PNC because of her age, race and gender. [Record No. 1] She argues that she can demonstrate a *prima facie* case of discrimination and that there are genuine issues of material fact regarding whether the reason provided by PNC for her termination was pretextual. [Record No. 43] But after reviewing the arguments and materials submitted in connection with PNC's motion, the Court concludes that Howard has not offered sufficient evidence to demonstrate a *prima facie* case of discrimination or to support her claim that the legitimate, nondiscriminatory reasons for termination were pretextual.

I.

Howard worked at Commerce National Bank (a predecessor of PNC) and PNC from 1990 to 2016. [Record No. 34-1, p. 7] She was transferred to PNC's Winchester Branch to its Hamburg in 2014 where she continued to work as a teller. [Record No. 34-1, pp. 7-11] Howard interviewed with the Hamburg branch manager, Nancy Lee Porter, and the assistant

manager. [Record No. 34-1, p. 15] She started work at the Hamburg branch on August 11, 2014. [Record No. 34-2, p. 2] Howard alleges that Porter made comments regarding her retirement and vacation days while she worked at the Hamburg branch. [Record No. 34-1, p. 25]

Howard cashed checks and accepted over-the-counter business deposits as well as personal deposits in her capacity as a teller. [Record No. 34-1, pp. 19-20] Over-the-counter business deposits require that a customer present a deposit bag to the teller and initial the over-the-counter deposit log, indicating how many bags were presented. [Record No. 34-1, p. 33] The teller then initials the log twice – once indicating how many bags were presented and once after the deposit has been processed. [Record No. 34-1, p. 33] There are separate columns for the customer's and teller's initials. [*See, e.g.*, Record No. 39-2, p. 3.]

PNC's Code of Business Ethics and Conduct prohibits employees from committing dishonest acts and falsifying business records. [Record Nos. 34-7, 34-8] Further, the bank has a fidelity bonding policy requiring that employees be bonded to work for the company. [Record No. 34-10] If an employee commits a dishonest act, the individual is no longer bonded and can no longer work for PNC.

Howard was working on May 24, 2016, when a customer entered the branch to make an over-the-counter business deposit. [Record No. 34-1, p. 43] Howard processed the deposit, but did not realize the customer failed to initial the log. [Record No. 34-1, pp. 43-44] Later, after discovering that the customer has not initialed the log, Howard placed her own initials in the box designated for the customer's. [Record No. 34-1, p. 42] Another teller, Rebecca Hirz, noticed that Howard had initialed the log improperly in place of the customer. Hirz reported

the incident to assistant branch manager, Emily Wilhoit, who then reported the matter to the employee relations information center ("ERIC"). [Record No. 39-4]

David Snow, a senior employee relations investigator for PNC, was assigned to investigate the incident. [Record No. 39-4] He examined the deposit log, reviewed the video recording of the deposit, interviewed the plaintiff and Hirz, and consulted a prior log to compare initials. Snow states that when he first interviewed Howard, she explained that she wrote the customer's initials on the log, but in a subsequent interview she stated that she wrote her own initials as a reminder to have the customer verify the deposit. [Record No. 39-4] The customer returned on June 4, 2016, but Howard did not ask the customer to correct the notation on the previous deposit log. Based on the foregoing, Snow concluded that the plaintiff violated PNC's Code of Ethics.

Snow recommended that PNC terminate Howard's employment because: (i) she initialed the log in the area designated for the customer's initials; (ii) she did not ask for guidance when she realized the customer had not initialed the log; and (iii) Snow believed that Howard was being deceptive. [Record No. 43-1, p. 76] Snow asserted that Howard did not tell anyone about the irregularity and had shifting stories when asked about initialing the log. Porter asked Howard to meet in her office on June 21, 2016. During this meeting, Snow explained that Howard was being terminated. [Record No. 34-1, p. 51]

Howard filed a charge of discrimination with the EEOC on July 19, 2016, claiming discrimination based on age, race, and gender. [Record No. 34-13] Howard explained in her EEOC charge that she did not falsify any record, and that she merely printed her initials in the upper corner of the customer's initial box. [Record No. 34-13] She also alleged that a white, male teller was treated more favorably because he was investigated for a falsified over-the-

counter log, but only received a written warning for his violation. [Record No. 34-13] Howard filed suit in Fayette Circuit Court on April 10, 2018, alleging discrimination based on race, gender and age in violation of the Kentucky Civil Rights Act. [Record No. 1] PNC removed the matter to this Court on May 21, 2018.

**II.**

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The determination concerning material facts concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely on the assertions in its pleadings. Instead, she must come forward with probative evidence to support her claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 58.

**III.**

As noted, Howard claims that she was terminated based on her age, race and gender. Kentucky Revised Statute 344.040 states "[i]t is an unlawful practice for an employer . . . to discharge any individual . . . because of the individual's race, color, . . . sex, [or] age forty (40) and over . . ." The Kentucky Civil Rights Act ("KCRA") is interpreted consistent with both the Age Discrimination in Employment Act ("ADEA") and Title VII. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) ("Claims brought under the KCRA are analyzed in the same manner as ADEA claims.") (internal citations and quotations omitted); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000) ("Ky. Rev. St. Chapter 344 mirrors Title VII of the Civil Rights Act of 1964"). It is also noteworthy that claims of discrimination may be proven by direct or indirect evidence. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004) (claiming age discrimination in violation of ADEA); *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 835 (6th Cir. 2012) (claiming race discrimination in violation of Title VII); *Bartlett v. Gates*, 421 F. App'x 485, 487 (6th Cir. 2010) (claiming sex discrimination in violation of Title VII).

Howard appears to concede that she does not have direct evidence of discrimination. Thus, the Court examines whether the plaintiff has offered indirect evidence under the *McDonnell Douglas* burden-shifting framework. 411 U.S. 792, 802 (1973). To establish a *prima facie* case under *McDonell Douglas*, a plaintiff must show that she: (i) is a member of the protected class, (ii) was subject to an adverse employment action, (iii) was qualified for the position; and (iv) was treated differently than other similarly-situated employees outside the protected class. *Mitchell,* 389 F.3d at 181 (applying *McDonnell Douglas* in age discrimination action); *Romans,* 668 F.3d at 835 (applying *McDonnell Douglas* in a Title VII

action). If Howard demonstrates a *prima facie* case, the burden shifts to PNC to establish a nondiscriminatory reason for the termination. *Harris v. Metro. Gov. of Nashville & Davidson Cnty., Tenn.,* 594 F.3d 476, 485 (6th Cir. 2010). And if PNC provides a nondiscriminatory reason for the adverse employment action, the burden shifts back to Howard to demonstrate pretext. *Id.*

### A. Howard does not present sufficient evidence to establish a *prima facie* case of discrimination.

Howard argues that she is a member of a protected class, that she: (i) was qualified for her position; (ii) adverse employment action was taken against her; (iii) circumstances suggest a discriminatory motive because of different treatment given to a similarly-situated employee. Regarding the third assertion, Howard provides information about other individuals who were investigated for mishandling over-the-counter financial deposits. And she compares her situation specifically to Wesley Bratcher, a younger white male, who was investigated for an over-the-counter deposit infraction, but only given a warning for the violation.

Howard is a member of a protected class and can demonstrate adverse employment action. PNC, however, takes issue with the assertion that Howard was qualified for the position and it argues that she cannot show that a similarly-situated individual was treated more favorably.

### i. Howard has presented sufficient evidence to demonstrate that she was qualified for the teller position.

In determining whether a plaintiff is qualified for a position, she "need only show that she satisfied an employer's 'objective' qualifications." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). As the Sixth Circuit has noted,

> [t]he *prima facie* burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills.

*Wexler v. White's Fine Furniture, Inc,* 317 F.3d 564, 575-76 (6th Cir. 2003).

PNC asserts that Howard is no longer qualified for the job because she cannot meet the fidelity bonding policy required for all of its employees. It explains that dishonest acts terminate bond coverage. [Record No. 34-9] The fidelity bonding policy requires that all PNC employees be bonded while working for the company, and if PNC reasonably believes that an employee committed a dishonest act, then the employee's bond coverage is suspended. [Record No. 34-9] It argues that by improperly initialing a deposit log and by failing to take steps to remedy the situation, Howard violated the bonding policy and became unqualified to work for the bank.

Conversely, Howard argues that she is objectively qualified for the position of teller at the bank and that PNC does not challenge her objective qualifications. She relies on the holding in *Wexler v. White's Fine Furniture, Inc.*, in support of her argument that PNC injected its purported nondiscriminatory reason in claiming that she was not qualified for the teller position. 317 F.3d at 574. As the court in *Wexler* explained, "a court may not consider the employer's alleged nondiscriminatory reason for taking adverse employment action when analyzing the *prima faci*e case." *Id.* at 574.

The defendant in *Blackwell-Murray v. PNC Bank* argued that, by admitting to violating the notary policy at PNC, the plaintiff was no longer covered under the bank's fidelity bond policy and was no longer qualified to work at the bank. 963 F. Supp. 2d 448, 463 (E.D. Pa.

2013). The court concluded that, while the argument was factually correct, it was not proper matter to consider as an element of a *prima facie* case. *Id.*; *see also Frank v. PNC Fin. Servs. Group*, 2013 US. Dist. LEXIS 115276 (W.D. Pa. Aug. 15, 2013) (explaining that the plaintiff was qualified for the position of teller because of his years of experience and was regarded as a competent employee, even though he had violated PNC's Code of Ethics by engaging in forced balancing); *Eboda v. PNC Bank, N.A.*, 2018 U.S. Dist. LEXIS 159470 *1, *15, *20 (E.D. Pa. Sept. 18, 2018) (finding that she qualified for the position even though she had violated PNC's Code of Ethics making her no longer employable under the bank's fidelity bonding policy).

Based on her years of experience as a teller at PNC and its predecessor bank and her performance evaluation, Howard has set forth sufficient evidence that she is qualified for the position of bank teller. [Record No. 43-4] Thus, she has established the third element of her *prima facie* case.

        ii.     Howard cannot establish the fourth element of a *prima facie* case.

Howard claims that she was treated differently than Wesley Bratcher. [Record No. 42, p. 15] Thus, she must show that she and Bratcher were similarly-situated in all relevant aspects to establish the fourth element of a *prima facie* case. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Tennial v. UPS*, 840 F.3d 292, 304 (6th Cir. 2016). "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583 (citations omitted).

Howard presents evidence that she and Bratcher were similarly-situated in some relevant respects, but not all. First, Howard and Bratcher were employed in the same capacity. And both incidents: (i) involved a deposit log for an over-the-counter deposit; (ii) involved the same policies and procedures; (iii) were investigated by David Snow; and (iv) were subject to PNC's Code of Ethics. [Record No. 43, p. 15] Howard asserts Bratcher was treated more favorably because he was issued only a written warning, whereas she was terminated. [Record No. 39-7, p. 2] But Bratcher and Howard did not have the same supervisor. [*Compare* Record No. 39-7, *with* Record No. 39-4.] As a result, Howard cannot show that they were similarly-situated in all relevant aspects. But even assuming Howard could meet her *prima facie* case, she has not presented sufficient evidence to demonstrate that the legitimate, nondiscriminatory reason for her termination was pretextual.

### B. PNC Bank presented a legitimate, nondiscriminatory reason for terminating Howard.

PNC Bank asserts that it had a legitimate, nondiscriminatory reason for terminating Howard. It argues that she violated PNC Bank policies and was terminated because of this infraction. Howard agrees that PNC Bank has met its burden of producing a nondiscriminatory reason for her termination. [Record No. 43, p. 15] Thus, the burden shifts back to Howard.

### C. Howard has not presented sufficient evidence to establish that the reason for her termination was pretextual.

There is no genuine issue of material fact regarding pretext. Howard has not produced evidence from which a jury could reasonably doubt PNC Bank's explanation for terminating her. "To show pretext at the summary judgment stage, 'the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were

insufficient to motivate discharge.'" *Carter v. Toyota Tsusho Am., Inc.*, 529 F. App'x 601, 610 (6th Cir. 2013) (quoting *Manzer,* 29 F.3d 1078, 1084 (6th Cir. 1994), *abrogated on other grounds by Gross v. FBL Financial Servs.*, 557 U.S. 167 (2009), *as recognized in Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009)). Howard must demonstrate that the presumptively valid reason for her termination was a cover-up for a discriminatory decision. *McDonald v. Union Camp. Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) (quoting *McDonnell Douglas*, 411 U.S. at 805). This requires Howard to produce some evidence from which a jury could reasonably reject the defendant's reason for terminating her employment. *Chen v. Dow Chem. Co.,* 580 F.3d 394, 400 (6th Cir. 2009).

"To prove that an employer's explanation had no basis in fact, . . . the plaintiff must present evidence that the proffered bases for discharge never happened." *Smith v. Hinkle Mfg., Inc.*, 36 F. App'x 825, 829 (6th Cir. 2002); *see also Manzer,* 29 F.3d at 1084. But here, the proffered basis for discharge did happen. Howard admits that she initialed the deposit log in the area reserved for the customer. [Record Nos. 39-3] The investigator concluded that Howard had violated PNC's Code of Ethics and recommended termination. [Record No. 39-4] And Howard was then terminated because she violated the bank's Code of Ethics by falsifying the deposit log. [Record No. 39-4] Howard does not present any evidence to dispute that she initialed the log improperly or that her actions were not in violation of the bank's policies.

Next, Howard has not produced evidence sufficient to show that the proffered reason did not actually motivate the discharge. To establish pretext under this scenerio, Howard must "put forth evidence that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258

F.3d 488, 494 (6th Cir. 2001). Thus, the "key inquiry is whether the employer made a reasonably informed and considered decision before taking the complained-of-action." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 531 (6th Cir. 2001) (*quoting Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007)).

Howard does not produce sufficient evidence to dispute Snow's belief that she committed a violation of PNC's Code of Ethics. Snow conducted an investigation by interviewing witnesses, reviewing relevant documents, and observing the video recording of the deposit before concluding that Howard had violated PNC Bank's policies by intentionally initialing the log in the area reserved for the customer and by failing to advise anyone regarding the incident. Snow also concluded that Howard acted deceptively regarding the matter. [Record Nos. 39-4; 39-3, p. 3; 43-1]. Based on this investigation, the employer made a reasonably informed decision before terminating Howard's employment.

But Howard argues that Porter's role in terminating her renders material her (Porter's) "repeated inquiries of Howard's retirement plan." [Record No. 43, p. 19] Discriminatory remarks can serve as probative evidence of pretext. *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020 (6th Cir. 1993) ("age-related comments referring directly to the worker may support an inference of age discrimination."). However, "isolated or ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." *Id.* (finding statements made about one's birthday was too ambiguous to establish the necessary inference of age discrimination) (internal citations and quotations omitted).

Howard concedes in her deposition that Porter and Snow never made comments about her race or gender, and that only Porter commented about Howard's plans for retirement and

- 11 -

vacation days. [Record No. 43-2, pp. 59-65] Porter's isolated comment ("[w]hy don't you just go ahead and retire,") and statements about putting in leave requests are in the context of taking time off for vacation. [Record No. 43-2, p. 60] Such isolated and ambiguous references do not support a finding of age discrimination. Further, the fact that Porter was the person who hired Howard cuts against her argument. *See Garrett v. Sw. Med. Clinic*, 61 F. App'x 351, 357 (6th Cir. 2015) (explaining that when the same actor hired and fired an individual can weaken a claim of discrimination).

Howard also asserts that the shifting discussion of who fired her adds to pretext. However, the evidence illustrates that Snow primarily investigated the incident giving rise to Howard's discharge and spoke to his manager (Laurie Collins), the regional manager (Diane Richert), and Nancy Porter throughout the process. After conducting the investigation Snow was the person who recommended termination. [Record No. 43-1, p. 73-77] Porter was present when Snow explained the decision to terminate Howard. [Record No. 39-4, p. 7] Slight inconsistencies in explaining who decided to terminate Howard does not undercut the explanation that she was terminated because she violated the bank's Code of Ethics by improperly initialing the deposit log and then failing to report the incident.

Next, Howard asserts that her long and good employment record would contribute to the jury's pretext finding. However, Howard affirmed in her deposition that she had previously been given a written warning and was previously placed on probation. [Record No. 43-2, p. 8-9] She also had been given a verbal warning for a buy/sell difference and a written warning stating that the plaintiff "required immediate and sustained improvement," while working at the Hamburg branch. [Record No. 43-2, p. 18] Further, her employment record does not

undermine the fact that she improperly initialed the deposit log and did not advise anyone about the improper action.

Next, Howard cannot offer sufficient evidence that the reasons for her dismissal were insufficient to motivate her termination. Pretext can be shown by demonstrating a substantially similar individual was not fired even though he engaged in substantially identical conduct that led to a plaintiff's termination. *Smith*, 36 F. App'x at 829-30. A plaintiff must produce "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer,* 29 F.3d at 1084.

Howard compares herself to Bratcher and relies upon the affidavit of Wanda Pinkston in support of this argument. [Record No. 43-6] Pinkston was employed by PNC Bank as a teller, assistant manager, and branch manager until December 2016. [Record No. 43-6, p. 1] She was the branch manager in Danville, Kentucky, where Bratcher was employed. [Record No. 43-6, p. 2] Pinkston also avers that she was familiar with the situation involving Howard, but she does not explain how she came to understand the plaintiff's situation since she was not involved in the incident, did not work at the Hamburg branch in Lexington, Kentucky, and was not involved in investigating complaints. Pinkston testified that Howard's termination was a substantial deviation from policy and procedures. Thus, Howard claims that the deviation from personnel practices creates a genuine issue of material fact.

Pinkston's affidavit includes information falling outside her personal knowledge. Further, her assertions regarding policies and procedures deviate from that of a potential fact witness and, instead, concern specialized knowledge akin to expert testimony. *See McFerrin v. Allstate Prop. & Cas. Co.*, 29 F. Supp. 3d 924, 933 (E.D. Ky. 2014) (testifying to his opinion

concerning "scientific, technical, or other specialized knowledge" is within the ambit of expert testimony under Federal Rule of Evidence 702 and needs to be disclosed under Rule 26). Pinkston is seeking to offer specialized knowledge regarding the practices and procedures of PNC, but she was never identified as an expert. As a result, Pinkston's affidavit will not be considered in deciding whether there was a deviation from typical practice at PNC. *See* Fed. R. Civ. Pro. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). In short, the evidence provided by Howard is insufficient to demonstrate that her termination of employment was a deviation from typical policies or procedures.

It is also noteworthy that Howard and Bratcher are dissimilar in several respects. First, Bratcher and Howard had different supervisors. *Mitchell*, 964 F.3d at 583 ("to be deemed similarly-situated the individuals with whom the plaintiff seeks to compare her treatment must have dealt with the same supervisor. . ."). Second, while the conduct of each individual involved over-the-counter deposits, they did not engage in substantially identical conduct. *Manzer,* 29 F.3d at 1084.

Snow concluded that the claim that Bratcher had falsified business records or documents was unfounded. [Record No. 47-3, p. 3] He noted that Bratcher initialed the log for a deposit bag, secured it in his coin vault with the intention of processing the bag, but forgot to actually deposit the bag. [Record No. 43-1, pp. 18-49] He also determined that Bratcher's conduct did not violate PNC's Code of Ethics. [Record No. 47-3] Conversely, Snow found that Howard violated the bank's Code of Ethics because she not only initialed the log improperly, but she failed to ask for help thereafter. Also, as noted previously, Snow

concluded that Howard acted deceptively regarding the incident. [Record No. 43-1, pp. 69-74] Howard conduct differs from Bratcher because she actually initialed the log improperly whereas Bratcher merely initialed the log before finishing the transaction. And Bratcher received a written warning for his behavior and was subject to further disciplinary action if he did not demonstrate immediate and sustained improvement. [Record No. 39-7]

An employer's business judgment is not a valid method for establishing pretext. *Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 898 (6th Cir. 1997); *see also Pruitt v. First Am. Nat'l Bank*, 1999 U.S. App. LEXIS 17971 *1, *15-16 (6th Cir. July 23, 1999) ("Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules."). After a thorough investigation, Snow recommended that Howard be terminated for violating the bank's Code of Ethics by improperly initialing the deposit log and by failing to ask for guidance after detecting that the customer had not initialed the document. [Record No. 43-1, p. 74-76]

Howard also compares her situation to that of Wendy Simonsen who was also terminated for violating PNC policies. Simonsen was terminated for falsifying records by entering information that was not contained on a Kentucky's driver's license while opening new accounts. [Record No. 47-1] Simonsen was terminated for violating the bank's Code of Ethics, similar to the plaintiff, demonstrating that a violation of the Code of Ethics leads to termination. [Record No. 47-1] Howard compares Simonsen's termination to Bratcher's non-termination in an attempt to demonstrate that Snow discriminated against female employees by utilizing the Pinkston affidavit. It is unclear, however, how Pinkston has information regarding Simonsen's situation since she was not working under Pinkston at the time of the

violation. And Howard has not provided any evidence that the decision to terminate Simonsen was discriminatory.

Finally, Howard also asserts that there are disputed issues of material facts regarding: (i) an intent requirement in the bank's Code of Ethics; (ii) whether she attempted to disguise her initials; and (iii) a telephone conversation of June 6, 2016. But these facts are not material because they do not cast doubt on the fact that Howard admits that she initialed the deposit log improperly and never sought guidance thereafter. [Record No. 43-2, p. 22-23] Assuming that there is an intent requirement, Snow recommended termination because Howard inserted her initials in an area reserved for the customer. [Record No. 43-1, p. 76; *see Anderson v. U.S. Bank Nat'l Ass'n*, 2016 U.S. Dist. LEXIS 84728 (S.D. Ohio June 28, 2016) (holding that even if there was an intent requirement in the Code of Ethics section, the plaintiffs argument still failed to undermine the factual basis for her termination because the individual who terminated her believed that the plaintiff had the intent to manipulate the records).]

Finally, Howard argues that there is a conflict between Snow's deposition testimony and the testimony she offered. According to Howard, the first time she spoke to Snow, she told him that she added her own initials to the log. Conversely, Snow testified that Howard gave shifting explanations. [*Compare* Record No. 43-2, p. 93, *with* Record No. 43-1, pp. 74-76.] But this conflict does not overcome the plaintiff's admissions that she initialed the document improperly or that she failed to timely report the matter. [Record No. 43-2, p. 22-23]

## IV.

Based on the foregoing analysis and discussion, PNC Bank is entitled to summary judgment on the plaintiff's claims of discrimination. Therefore, it is hereby

**ORDERED** as follows:

1.  Defendant PNC Bank, N.A.'s Motion for Summary Judgment [Record No. 33] is **GRANTED.**

2.  Defendant PNC Bank, N.A.'s Motion for a Protective Order [Record No. 50] is **DENIED**, as moot.

3.  Defendant PNC Bank, N.A.'s Motion to Continue the Trial [Record No. 51] is **DENIED**, as moot.

Dated: May 2, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge